# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RANDY T. DAVIS, SR., #366577,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. 12-cv-3454-RWT |
| **WAYNE A. WEBB,** *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

## I. PROCEDURAL HISTORY

Plaintiff's 42 U.S.C. § 1983 civil rights Complaint was received for filing on November 21, 2012. (ECF No. 1). The Complaint alleges that Plaintiff, Randy T. Davis, Sr., then confined at the Maryland Correctional Institution in Hagerstown ("MCIH"), was injured on July 11, 2012, while performing a work assignment due to an unsafe condition "known by department supervisor Hull." (*Id.*). He claims that his job was terminated on July 19, 2012, in violation of a prison directive.[1] (*Id.*). Plaintiff contends that he received inadequate medical treatment because he was never seen by a physician, but was examined by a nurse and given an x-ray[2] and pain medication several weeks after the accident. He claims that the x-ray noted injuries to his back and hip. Plaintiff alleges that despite his attempts to resolve his medical problem, he remains in pain. He seeks lost wages and compensation for pain. (*Id.*)

## II. PENDING DISPOSITIVE MOTIONS

---

[1] A state's failure to abide by its own prison regulations does not set out a constitutional issue. *See Ricin v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990).

[2] Plaintiff alleges that the nurse filed the wrong paperwork to schedule the x-ray and referral. (ECF No. 1).

1

Warden Webb's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment remains pending.[3] (ECF No. 12). Plaintiff has filed his Opposition. (ECF No. 14). The case may be determined without oral argument. *See* Local Rule 105.6. (D. Md. 2011). For the reasons set forth below, Defendant Webb's dispositive Motion will be granted.

## III. STANDARD OF REVIEW

1. Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people . . . .'" *Id*. at 1966 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *IFAST, Ltd. v. Alliance for Telecommunications Industry Solutions, Inc.*, No. CCB–06–2088, 2007 WL 3224582, at *3 (D. Md. 2007).

2. Motion for Summary Judgment

Summary Judgment is governed by Fed. R.Civ. P. 56(a), which provides, in part:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] Service of process was refused as to Defendant Rose Merry.

matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). In resolving the motion, the Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the Court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**IV.    DISCUSSION**

1. Facts

Defendant Webb argues that medical care for MCIH inmates is provided by private health care contractors. (ECF No. 12, Ex. 1 at Webb Decl.). According to the accompanying medical records, he further alleges that there was no unconstitutional denial of medical care as Plaintiff was subject to frequent examinations by health care staff. Indeed, the submitted medical record shows

3

that Plaintiff was seen on July 17, 2012, by Nurse Laura Smith for his complaints of hip and back pain. She noticed no discoloration or deformity but found that the right side was tender to the touch and that Plaintiff limped slightly. (ECF No. 12 at Ex. 3).

On August 8, 2012, Plaintiff was evaluated at nurse sick call by Nurse Christine Christman for pain in his back and hip. His pain medication was renewed by a physician's assistant ("PA"), who also ordered an x-ray. (*Id.*). In addition, Nurse Christman directed that Plaintiff remain on a no-work/no play status for five days. (*Id.*). Plaintiff was given medication for pain and instructed to return if his issues did not resolve. On August 22, 2012, Plaintiff was seen by a PA, who noted the August 8, 2012 consultation and scheduled Plaintiff to receive anti-inflammatory medication for another two weeks.

The following day, Plaintiff was seen at sick-call for back and right hip pain. X-rays of the right hip and lumbosacral spine were re-ordered. (*Id.*) The x-ray was conducted on August 28, 2012. A slight deformity of the head of the femur, along with a degenerative change with reduction of joint space and small osteophyte[4] formation was seen along the superior portion of the hip joint. The radiology report noted mild degenerative changes of the spine with small anterior osteophytes seen at L-3 to L-4 and L-4 to L-5 levels. The spine alignment was found to be unremarkable. (*Id.* at p. 16).

On December 4, 2012, Plaintiff was again placed on a no-work/no-play assignment for five days by a prison nurse. On March 4, 2013, he was seen by a PA, who noted right hip tenderness and a mildly reduced range-of-motion ("ROM") and prescribed Naproxen for 30 days and a plan of back/stretching exercises.

---

[4]  Osteophytes are smooth, bony growths (bone spurs) that form over a long period of time. *See* www.cedars-sinai.edu/Patients/Health.

On March 14, 2013, he was seen by Nurse Kimberly Young and was given warm compresses, a tube of muscle rub cream, and instructions for stretching exercises. (ECF No. 12 at pgs. 28-29). On March 15, 2013, a PA prescribed Meloxicam[5] for four months. (*Id*. at p. 30). Defendant Webb asserts that Plaintiff's mere disagreement with the course of treatment adopted by medical providers does not establish a colorable Eighth Amendment claim.

In his Opposition, Plaintiff complains that that in July of 2012 he was informed that he would see a physician and receive an x-ray for his injuries. (ECF No. 14). He was later informed that a nurse filled out the wrong paperwork for radiology and physician referrals. Plaintiff alleges that he was continually told that he would see a doctor, but this did not occur, and he received no medical treatment for eight months. (*Id.*).

2. Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide

---

[5] Meloxicam is a non-steroidal anti-inflammatory drug. *See* www.rxlist.com.

it or ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[6] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F. 3d at 390 (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for—or extent of—medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

Insofar as the Complaint names Warden Webb as a Defendant, there is no allegation or

---

[6] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

6

showing that Webb was personally involved in Plaintiff's medical care while he was incarcerated at MCIH. Plaintiff has provided no evidence demonstrating supervisory liability on the part of the Warden. *See* S*haw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Defendant Webb's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will therefore be granted.

Further, the exhibits show that Plaintiff is a 50-year old male who reported an injury to his right side from a slip and fall in July of 2012. While the Court acknowledges that Plaintiff was not seen by a physician for his complaints of hip and leg pain throughout the latter portion of 2012, he was seen by nurses and PAs and was first prescribed Motrin and Tylenol.

An x-ray was not performed until August 28, 2013. This delay, however, does not appear to have occurred through the intentional acts of health care staff but happened, according to Plaintiff, as a result of paperwork error committed by a nurse. In any event, the x-rays revealed nothing abnormal regarding Plaintiff's hip and spine, other than the formation of bone spurs and slight degenerative irregularities that come with age. Prior medications were discontinued and treatment with anti-inflammatory medications Naproxen and Meloxicam were prescribed along with stretching exercises.

While Plaintiff may be dissatisfied with the course of treatment and the health care professionals he saw, the conservative care he received given his established hip and spinal conditions met the minimum constitutional requirements. No Eighth Amendment violation has been demonstrated.[7]

## V. CONCLUSION

---

attention." *Iko*, 535 F.3d at 241, citing to *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).
      [7] In light of this finding, the Court shall dismiss the Complaint filed against Defendant Rose Merry.

For the aforementioned reasons, Defendant Webb's Motion to Dismiss or for Summary Judgment [ECF No. 12] is granted. The Complaint shall otherwise be dismissed without prejudice as to Defendant Rose Merry. A separate Order follows.


Dated: August 28, 2013                             /s/
                                          ROGER W. TITUS
                                     UNITED STATES DISTRICT JUDGE